# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Marvin Aspen | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 9871 | **DATE** | 10/30/2002 |
| **CASE TITLE** | Heidi Newman vs. Hansen & Hempel Co., et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order: Defendants' motion to dismiss (8-1) is denied in part and granted in part.

(11) ■ [For further detail see order attached to the original minute order.]

| | | |
|---|---|---|
| | No notices required, advised in open court. | |
| | No notices required. | number of notices |
| ✓ | Notices mailed by judge's staff. | |
| | Notified counsel by telephone. | NOV 01 2002 date docketed |
| | Docketing to mail notices. | |
| | Mail AO 450 form. | docketing deputy initials |
| | Copy to judge/magistrate judge. | 10/30/2002 date mailed notice |
| GL | courtroom deputy's initials | GL mailing deputy initials |
| | Date/time received in central Clerk's Office | |

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| HEIDI NEWMAN,  Plaintiff | )<br>)<br>) |
| vs. | ) No. 01 C 9871<br>) |
| HANSEN & HEMPEL COMPANY<br>HAROLD KOCHAN,<br>PAUL GHIOTTO, ART GHIOTTO<br>and RICH WENSERITH,<br>Defendants | )<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM OPINION AND ORDER

MARVIN E. ASPEN, District Judge:

Plaintiff Heidi Newman has brought a five count complaint against the firm of Hansen & Hempel and individual Defendants Harold Kochan, Paul Ghiotto, Art Ghiotto, and Rich Wenserith alleging sexual harassment and related charges. The Defendants have moved to dismiss Count III (Intentional Infliction of Emotional Distress), Count IV (Offensive Battery), and Count V (Defamation of Character). Defendants' motion is denied in part and granted in part.[1]

## I. BACKGROUND

The following facts are taken from the Plaintiff's Complaint and are assumed to be true for the purposes of adjudicating this motion. Plaintiff Heidi Newman ("Newman") was employed by the firm of Hansen & Hempel ("H&H") as a full-time secretary/receptionist for about eight months

---

[1] Counts I and II, not the subject of Defendants' motion, allege sexual harassment and constructive termination, respectively.

-1-



ending on August 24, 2000. As a construction company, H&H had over 100 employees at all times relevant to this complaint, but most employees were union workers who spent most of their time out in the field. As such, Newman was one of just seven office workers.

For nearly the entire time of Newman's employment, she was subjected to offensive and abusive treatment from Harold Kochan ("Kochan"), the president and owner of H&H, Paul Ghiotto and Art Ghiotto, both employed by H&H in a management capacity, and Rich Wenserith ("Wenserith"), H&H's comptroller. Specifically, Newman was often verbally harassed by her male co-workers. Such harassment included being yelled at, cursed at, called derogatory names, and having her ability denigrated. These same co-workers often made degrading remarks to Newman about women in general and women of her acquaintance in particular and called women derogatory names. Art Ghiotto insisted on calling Newman such names as "sweetie" and "honey," despite Newman's objections. She was also subjected to repeated suggestive comments about her physical appearance. She was humiliated by management by frequently being chastised in front of others and being called "over-emotional," both to her face and behind her back. H&H management also denigrated her personal misfortunes, including her father's suicide, her child's injury, and her dog being put to sleep.

In addition to verbal abuse, Newman claims to have been subjected to unequal terms and conditions of employment compared to similarly situated male employees. She was expected to purchase breakfast for her co-workers and deliver it to the office on her own time at least once every week while similarly situated male co-workers were not expected to do so. Newman also claims that she was frequently required to do the work of her male co-workers because they were too drunk, high, or lazy to do it themselves. When this work was not done correctly or on time, she was

chastised while her male co-workers were never chastised for their own poor job performance. Finally, when Newman was hired, she was assured that her total compensation package would include health and medical insurance for her family, including her severely handicapped son. In August 2000, however, with only one week's notice, H&H eliminated family health insurance. Newman alleges that she was the only one hurt by this change because all other H&H employees were either unionized under a separate policy or did not have dependants.

Newman's complaint also alleges physical abuse. Despite her objections, Art Ghiotto would regularly touch or rub her arms, shoulders, back, and buttocks, and look at her cleavage. Finally, on August 24, 2000, Newman alleges that Paul Ghiotto grabbed both arms of the chair in which Newman was sitting, leaned over her and screamed in her face, thereby physically intimidating her. Newman was forced to push him off her in order to escape. This event made Newman fear for her personal safety at H&H. Her complaint alleges that this conduct, combined with the other conduct described above, constituted her constructive termination. After the incident with Paul Ghiotto, Newman did not return to H&H.

Despite Newman's objections to the conduct described, H&H took no action to remedy the situation. Furthermore, there appeared to be no one at the company with whom Newman could lodge a formal complaint – H&H president Kochan was aware of, and participated in, the behavior in question. Finally, after Newman left H&H, Wenserith and other members of management told current and subsequent employees that Newman was an alcoholic, was incompetent at her job, and was stupid.

Newman filed a Charge of Discrimination with the Illinois Department of Human Rights and the Equal Employment Opportunity Commission on May 17, 2001. Thereafter, the EEOC issued

Newman a Notice of Right to Sue dated September 5, 2001, which Newman received on September 23, 2001. Newman filed this suit on December 26, 2001, within 90 days of receiving her "Right-to-Sue" letter from the EEOC.[2] In her complaint, Newman pleaded five counts: (1) sexual harassment and unequal terms and conditions of employment under Title VII of the Civil Rights Act (Count I); (2) constructive termination in violation of the Civil Rights Act (Count II); (3) intentional infliction of emotional distress (Count III); (4) offensive battery (Count IV); and (5) defamation of character (Count V).[3] Newman named H&H as a defendant on all five counts. Newman sued Harold Kochan in his individual capacity on Count III. Newman sued Paul and Art Ghiotto in their individual capacity on Counts III and IV. Newman sued Rich Wenserith in his individual capacity on Count V. Defendants have moved to dismiss Counts III, IV, and V as to both H&H and the individual defendants.

## III. Analysis

The purpose of a motion to dismiss under Rule 12(b)(6) is to decide the adequacy of the complaint, not the merits of the case. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a motion to dismiss, we must accept all well-pleaded allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *MCM Partners, Inc. v. Andrews-Bartlett & Assoc., Inc.*, 62 F.3d 967, 972 (7th Cir. 1995), *aff'd* 161 F.3d 443 (7th Cir.

---

[2] Because we were unable to determine, from the complaint and motions, whether Newman filed this suit within 90 days of receiving her right-to-sue letter, we referred this issue to Magistrate Judge Ashman. Judge Ashman found that Newman timely filed this suit. Pursuant to 28 U.S.C. §636(b)(1), we accept Judge Ashman's recommendation.

[3] Although listed separately, plaintiff numbered both the offensive battery and defamation counts as "Count IV." We will assume that this was a typographical error and will refer to the offensive battery claim as Count IV and the defamation of character claim as Count V.

-4-

1998), *cert. denied* 528 U.S. 810 (1999). Therefore, a complaint should not be dismissed "unless it appears beyond all doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). Rule 12(b)(1) requires dismissal of claims over which the federal court lacks subject matter jurisdiction. Jurisdiction is the "power to decide" and must be conferred upon the federal court. *In re Chicago, Rock Island & Pacific R.R. Co.*, 794 F.2d 1182, 1188 (7th Cir. 1986). In reviewing a 12(b)(1) motion to dismiss, the Court may look beyond the complaint to other evidence submitted by the parties to determine whether subject matter jurisdiction exists. *See United Transp. Union v. Gateway Western Ry. Co.*, 78 F.3d 1208, 1210 (7th Cir. 1996). The plaintiff faced with a 12(b)(1) motion to dismiss bears the burden of establishing that the jurisdictional requirements have been met. *See Kontos v. United States Dept. of Labor*, 826 F.2d 573, 576 (7th Cir. 1987).

### A. Count III (Intentional Infliction of Emotional Distress) and Count IV (Offensive Battery) are not preempted by the Illinois Human Rights Act

The Illinois Human Rights Act provides that "[e]xcept as otherwise provided by law, no court of this state shall have jurisdiction over the subject of an alleged civil rights violation other than as set forth in this Act." 775 ILCS 5/8-111(C). Sexual harassment is considered a civil rights violation under the IHRA. 775 ILCS 5/2-102(D). Under *Geise v. Phoenix Co. of Chicago, Inc.*, 639 N.E.2d 1273, 1277 (Ill. 1994), state tort law claims are preempted by the IHRA if they are "inextricably linked" to the alleged civil rights violations. The *Geise* court dismissed the plaintiff's claims for "negligent hiring" and "negligent retention" because these counts "depend[ed] on the [IHRA's] prohibitions against sexual harassment for their viability." *Id.* In 1997, the Illinois Supreme Court clarified their holding in *Geise*, stating that the IHRA does not preclude jurisdiction over "all tort

claims factually related" to incidents of civil rights violations. *Maksimovic v. Tsogalis*, 687 N.E.2d 21, 23 (Ill. 1997). "Rather, whether the circuit court may exercise jurisdiction over a tort claim depends on whether the tort claim is inextricably linked to a civil rights violation such that there is no independent basis for the action apart from the Act itself." *Id.* A claim will not be preempted if the plaintiff has alleged the elements of her common law tort claims "without reference to *legal duties*" created by the IHRA. *Id.* (emphasis added). Thus, in *Maksimovic*, where the sexual harassment aspect of the case was "merely incidental to what [were] otherwise ordinary common law tort claims" the IHRA did not preempt the plaintiff's assault, battery, and false imprisonment claims. *Id.*

Like the common law tort claims in *Maksimovic*, Newman's allegations of IIED and offensive battery are "long-recognized tort actions which exist wholly separate and apart from a cause of action for sexual harassment" under the IHRA. *Id.* Although Newman's IIED and battery allegations rely on some of the same factual allegations pertinent to her sexual harassment allegation, Newman need not rely on any "legal duties" created by the IHRA to make out the elements of IIED or offensive battery. *See Rapier v. Ford Motor Co.*, 49 F. Supp.2d 1078, 1079 (N.D. Ill. 1999) (claim of intentional infliction of emotional distress not "inextricably intertwined" with claim of sexual harassment); *Bruce v. South Stickney Sanitary District*, 2001 WL 789225, 4 (N.D. Ill. 2001) (holding that plaintiff who was subjected to unwanted touching and discovered co-workers hiding in the women's bathroom while she used it could support a claim of IIED without relying on civil rights law). Furthermore, we do not believe this is a case where the allegations of intentional infliction of emotional distress or offensive battery are actionable only because they were motivated by gender. *Krocka v. City of Chicago*, 203 F.3d 507, 517 (7th Cir. 2000). Accordingly, we hold that

Newman's intentional infliction of emotional distress and offensive battery claims are not preempted by the IHRA.

### B. Illinois Workers Compensation Act Preemption

The Illinois Workers Compensation Act (IWCA) was designed to provide financial protection to workers for accidental injuries arising out of and in the course of employment. *See Meerbrey v. Marshall Field & Co. Inc.*, 564 N.E.2d 1222, 1225 (Ill. 1990). The IWCA makes a tradeoff by imposing liability without fault upon the employer and, in return, making workers compensation the exclusive remedy for most workplace injuries. Section 5(a) of the IWCA states:

> No common law or statutory right to recover damages from the employer...or the agents or employees...for injury or death sustained by any employee while engaged in the line of his duty as such employee, other than the compensation herein provided, is available to any employee who is covered by the provisions of this Act. (Ill. Rev. Stat. 1987 ch. 48, par. 138.5(a).)

Section 11 of the IWCA further provides:

> The compensation herein provided, together with the provisions of this Act, shall be the measure of the responsibility of any employer...for accidental injuries sustained by any employee arising out of and in the course of the employment ...according to the provisions of this Act. (Ill. Rev.Stat. 1987, ch 48, par. 138.11.).

The IWCA bars employees from bringing a common law cause of action against his or her employer unless: (1) the injury was not accidental; (2) the injury did not arise from his or her employment; (3) the injury was not received during the course of employment; or (4) the injury was not compensable under the Act. *See Meerberry*, 564 N.E.2d at 1226; *see also Hunt-Golliday v. Metro. Water Reclamation Dist. of Greater Chicago*, 104 F.3d 1004, 1016 (7th Cir. 1997). In addition, the IWCA's exclusivity provision will not bar a common law cause of action "for injuries that the employer or its alter ego intentionally inflicts upon an employee or which were commanded or

expressly authorized by the employer." *Hunt-Golliday*, 104 F.3d at 1017. Newman argues that her claims against H&H are not subject to the exclusivity provision for two reasons. First, Newman contends that her injuries were "not accidental." Second, Newman argues that contends that her injuries were inflicted by the alter ego of H&H, Harold Kochan.

*Newman's injuries cannot be characterized as "not accidental"*

Newman contends that the torts of IIED and battery require a showing of intent and, therefore, cannot be characterized as "not accidental." Relying on the doctrine of respondeat superior, Newman seeks to transfer the intent of the individual employees to H&H. Newman fails to recognize, however, that "[t]he IWCA's exclusivity provision bars employees from bringing common law actions against their employers based solely upon the respondeat superior doctrine." *Hunt-Golliday*, 104 F.3d at 1017. Thus, Newman must establish that the injury was "not accidental" on behalf of the employer. Asserting that the injury resulted from an "intentional" tort is not enough, "[b]ecause injuries intentionally inflicted by a co-worker are accidental from the employer's point of view." *Hunt-Golliday*, 104 F.3d at 1016. To prove intent on the part of H&H, Newman must sufficiently allege that H&H "commanded or expressly authorized" its employees to inflict the injuries. *Meerbrey* 564 N.E.2d at 1226. Newman has not alleged that her injuries resulted from any kind of command or express authorization from H&H. She has merely argued that the harassment occurred in the course of employment, and has suggested that H&H knew or should have known of the harassment. The allegation that management was acting "within the scope of their authority is not equivalent to an allegation that [H&H] expressly authorized" the conduct. *Meerbrey*, 564 N.E.2d at 1227. Likewise, Newman's assertion that Kochan knew about the harassment is "insufficient to affix liability" upon H&H. *Damato v. Jack Phelan Chevrolet Geo, Inc.*, 929 F. Supp. 283, 292 (N.D.

Ill. 1996). Even if there was a pattern of harassment and tortious conduct by H&H employees, "such a pattern does not automatically mean that [H&H] itself intended [Newman] to suffer emotional distress as a result." *Hunt-Golliday*, 104 F.3d at 1017. Given Newman's failure to allege that H&H commanded or expressly authorized its employees to engage in tortious conduct towards Newman, we must conclude that Newman's injuries arising out of the IIED and battery were "accidental" within the meaning of the IWCA.

*Newman has sufficiently alleged that Harold Kochan was the alter ego of H&H.*

The exclusivity provision of the IWCA will allow a common law suit against the employer for injuries "the employer or its alter ego[4] intentionally" inflicted upon the plaintiff. We consider several factors when determining whether an individual tortfeasor is the alter ego of a corporate defendant because "[t]here are no bright lines to be drawn or simplistic formalities to apply." *Crissman v. Healthco International, Inc.*, 1992 WL 223820, 8 (N.D. Ill. 1992). First, we consider the employee's dominance in the company. Where an individual is an officer, director, or holds an important management position, such as general manager, this factor will weigh in favor of finding an alter ego. *See Al-Dabbagh v. Greenpeace, Inc.*, 873 F. Supp. 1105, 1114 (N.D. Ill. 1994). The second factor we look to is whether the individual tortfeasor has an ownership interest in the

---

[4] The "alter ego" concept is one that originated in the corporate law context and enables a person injured by a corporation to recover against a shareholder, officer, or director when the corporation was "a mere instrumentality of the dominant personality and when strict adherence to the corporate form would promote fraud or injustice." *Al-Dabbagh v. Greenpeace, Inc.* 873 F. Supp. 1105, 1113 (N.D. Ill. 1994). Although the basic concept remains the same, the application of the alter ego doctrine in the workers compensation context differs from its application in the corporate law arena. *See Buddingh v. South Chicago Cable, Inc.*, 830 F. Supp. 437, 443 (N.D. Ill. 1993)

defendant corporation.[5] *See id.* The third factor is whether the individual has "final decision making authority" in that she "speaks for the company." *Crissman v. Healthco International, Inc.*, 1992 WL 223820, 8 (N.D. Ill. 1992); *see also Johnson v. Federal Reserve Bank of Chicago*, 557 N.E.2d 328, 331-32 (Ill. App. Ct. 1990) (holding that bank managers who threatened dismissal, assigned extra hours of onerous work, issued unfavorable reviews, and subverted plaintiff-employee's authority over subordinates in retaliation for plaintiff's whistle-blowing might be alter ego of corporation); *Reynolds v. Hitachi Seiki U.S.A., Inc.*, 1993 WL 384535, 3 (N.D. Ill. 1993). Of particular importance is the individual's decision-making authority over the Plaintiff. For example, the supervisor was considered the alter ego of the defendant-corporation where he "had the discretionary power to grant tuition reimbursements, vacation days, sick leaves, and to discharge employees." *Whitehead v. AM International, Inc.*, 860 F.Supp. 1280, 1290 (N.D. Ill. 1994). Although an individual's managerial position is important, "[t]he fact that a supervisor was acting within the scope of his or her authority does not equal authorization by the employer for the commission of an intentional tort." *Hunt-Golliday*, 104 F.3d at 1017.

Applying this standard, we conclude that Kochan was the alter ego of H&H. Kochan is the only individual whom the plaintiff actually alleged was the alter ego of H&H. Indeed, Kochan satisfies all three factors outlined above: (1) as president of the company he likely had a (2) dominant position in the organization as well as (3) decision-making authority. In addition, Kochan

---

[5] We recognize that ownership in the corporation is a necessary factor to finding an alter ego in the corporate context for the purpose of piercing the corporate veil. We have noted, however, that the concept of alter ego plays a different role in the Workers Compensation arena. While we find ownership in the defendant-corporation to be an important factor in designating an individual as an alter ego in this context, it is not determinative. *See Buddingh v. South Chicago Cable Inc.*, 830 F. Supp. 437, 443 (N.D. Ill. 1993)

is the owner of H&H. This situation is much like that of *McKay v. Town & Country Cadillac, Inc.*, where the Plaintiff alleged that one of the assailants was the owner and president of the defendant-corporation. The *McKay* court denied the corporate defendant's motion to dismiss, finding that the plaintiff could potentially establish that the individual-defendant was the alter ego of the defendant corporation. 911 F.Supp. 966, 971 (N.D. Ill. 1997).

We cannot find, however, that Art Ghiotto, Paul Ghiotto, and Rich Wenserith were the alter egos of H&H. The only facts Newman has alleged that would support an inference that these employees were the alter ego of H&H is that Art and Paul Ghiotto were employed in a "management capacity," and that Wenserith was the Comptroller of H&H. Although Newman explicitly alleged that Kochan was the alter ego of H&H, she made no such allegation with regard to Art Ghiotto, Paul Ghiotto, or Wenserith. Furthermore, we know nothing about the role these individuals played in the company, whether they had dominant positions, owned any interest in H&H, or had final decision-making authority.

As such, we must conclude that Art Ghiotto, Paul Ghiotto, and Wenserith were not the alter egos of H&H. With regard to Newman's intentional infliction of emotional distress claim, we find that only the conduct of Kochan can be attributed to H&H. Because Newman's allegations of battery are based solely on the actions of Art and Paul Ghiotto, we dismiss this count against H&H.[6]

### C. Newman stated a claim for Intentional Infliction of Emotional Distress

Having found that the IWCA does not preempt Newman's IIED claim as it relates to Kochan's conduct, we must now look at the sufficiency of Newman's IIED allegations against

---

[6] Our holding that Art and Paul Ghiotto and Rich Wenserith were not the alter egos of H&H does not free them of liability for these torts in their individual capacity, but merely means that their tortious conduct cannot be imputed onto H&H.

-11-

H&H.[7] Because we have found that only Kochan acted as the alter ego of H&H, only his conduct can be evaluated as we determine whether Newman has stated a claim for IIED against the company.

There are three elements to a claim of IIED: (1) the conduct involved must be truly extreme and outrageous; (2) the actor must either intend that his conduct inflict severe emotional distress, or know that there is at least a high probability that his conduct will cause severe emotional distress; and (3) the conduct must in fact cause severe emotional distress. *See McGrath v. Fahey*, 533 N.E.2d 806, 809 (Ill. 1989).

We find the alleged conduct of Kochan, as an alter ego of H&H, and of each of the named Defendants in their individual capacity to be truly extreme and outrageous. The Defendants subjected Newman to far more than "mere insults, indignities, threats, annoyances, petty oppressions or trivialities."[8] *Graham*, 742 N.E.2d at 866. Newman was frequently yelled and cursed at, called derogatory names, humiliated, and subjected to suggestive comments about her physical appearance, including her breasts. In addition, "[m]anagement laughed at, and mocked her personal misfortunes, including her father's suicide, her child getting injured, and her dog being put to sleep." Compl.¶ 10. In addition, "the degree of power or authority which a defendant has over a plaintiff can impact upon whether that defendant's conduct is outrageous." *McGrath*, 533 N.E.2d at 809. Here, Kochan was Newman's boss, owner and president of H&H. Each of the individual Defendants held some

---

[8]Newman's complaint sometimes specifies which of her co-workers engaged in the allegedly tortious conduct; most times it merely refers to the conduct of "management" and her "co-workers." Because we must construe all allegations in the light most favorable to Newman, we will consider vague references to "management" and "co-workers" to refer to Kochan, Art and Paul Ghiotto, and Rich Wenserith.

-12-

type of management position. Another factor strengthening Newman's case against H&H is that Kochan was likely aware that Newman was "susceptible to emotional distress" *Id.* at 811. In fact, it appears that Kochan and others actually fed upon Newman's vulnerabilities – seizing upon her personal misfortunes such as her father's suicide and her child's injury to exacerbate her emotional distress. The inference that Kochan and the individual defendants intentionally inflicted emotional distress upon Newman is further supported by the fact that the offensive conduct continued despite Newman's objections.

Although we are mindful that "courts often hesitate to find a claim for intentional infliction of emotional distress in employment situations," *Graham v. Commonwealth Edison Company*, 742 N.E.2d 858, 867 (Ill. App. Ct. 1st Dist. 2000), we believe Newman's allegations of Kochan's conduct are sufficient to support a claim against H&H. The allegations are also sufficient to state a claim against Harold Kochan, Art Ghiotto, Paul Ghiotto, and Rich Wenserith in their individual capacities. We thus deny the Defendants' Motion to Dismiss Count III.

### F. Sufficiency of the Offensive Battery Allegations Against Art and Paul Ghiotto

Under Illinois law, battery is defined as the willful, unauthorized touching of another. *See Pechan v. Dynapro, Inc.*, 622 N.E.2d 108, 117 (Ill. App. Ct. 1993); *Schroeder v. Lufthansa German Airlines*, 875 F.2d 613, 622 (7th Cir. 1989). "To be liable for battery, the defendant must have done some affirmative act, intended to cause an unpermitted contact." *Mink v. University of Chicago*, 460 F. Supp. 713, 717 (N.D. Ill. 1978). The contact must be harmful or offensive in nature. *See Welch v. Ro-Mark, Inc.*, 398 N.E.2d 901, 905 (Ill. 1979). When evaluating whether contact was harmful or offensive the emphasis is on "the plaintiff's lack of consent to the touching." *Cohen v. Smith*, 648 N.E.2d 329, 332 (Ill. App. Ct. 1995). Newman has alleged that Art Ghiotto "would regularly touch

or rub her arms, shoulders, back, and buttocks." Compl. ¶ 10. Newman has also alleged that she complained about the abusive conduct directed towards her. Based on these allegations, we can reasonably infer that Art Ghiotto intentionally touched Newman. We can also infer that Newman did not authorize these touches. Thus, Newman has stated a claim for battery against Art Ghiotto, and defendant's motion to dismiss this claim as to Art Ghiotto is denied. *See Dockter v. Rudolf Wolfe Futures, Inc.*, 684 F. Supp. 532, 536 (N.D. Ill. 1988)(noting that supervisor's unauthorized patting, kissing, and fondling of the plaintiff constituted battery).

As to Paul Ghiotto, however, we dismiss Newman's claim of offensive battery. As discussed above, battery requires an offensive touching. Although Paul Ghiotto's conduct in grabbing the arms of Newman's chair, leaning over Newman and screaming in her face may have been unauthorized by Newman, it does not constitute a touching. As such, the battery count against Paul Ghiotto is dismissed.

### G. Defamation

In the final count of her complaint, Newman alleges Mr. Wenserith defamed her. Newman seeks to hold H&H liable for the defamation under the theory of respondeat superior. To state a claim for defamation, Newman must allege that (1) the defendant made a false statement about her; (2) there was an unprivileged publication of a defamatory statement to a third party by defendant; and (3) the publication damaged her. *Vickers v. Abbott Laboratories*, 719 N.E.2d 1101, 1107 (Ill. App. Ct. 1999). Newman alleges that Wenserith told current and subsequent employees that she was an "alcoholic, was incompetent at her job, and was stupid." Comp. P. 14. Newman alleges that Wenserith made these statements knowing that they were untrue. Newman further contends that these defamatory statements harmed her reputation. Thus, Newman has alleged facts sufficient to

state a claim for defamation. Nonetheless, we find that Wenserith's defamatory statements that Newman was incompetent and stupid are not actionable.

Even where a comment is defamatory per se, the statement is not actionable if it is a statement of opinion. *Hopewell v. Vitullo*, 701 N.E.2d 99, 102 (Ill. App. Ct. 1998). Wenserith's statements that Newman was "incompetent at her job" and "stupid" are opinions, not statements of fact. These statements are, therefore, not actionable. *See id.* (defamatory statement that officer was "fired because of incompetence" was nonactionable opinion); *see also Quiroz v. Hartgrove Hospital*, 1999 WL 281343, 15 (N.D. Ill. 1999) (holding that defendant's statements that plaintiff was "stupid" and "incompetent" were nonactionable opinions).

We cannot say, however, that Wenserith's alleged statement that Newman was an alcoholic is merely an opinion. Courts apply a three part test to determine whether a statement is one of fact or opinion. "First, we consider whether the language of the statement has a precise and readily understood meaning, while bearing in mind that the first amendment protects overly loose, figurative, rhetorical, or hyperbolic language, which negates the impression that the statement actually presents facts." *Hopewell*, 701 N.E.2d at 103. Although the term "alcoholic" has a precise meaning, we cannot tell from the complaint exactly how Wenserith used the term. Second, we look at the statement in its context. *Id.* Wenserith allegedly made the statement "to excuse the short period of time the two previous receptionists stayed with the Company." Compl. ¶ 38. This indicates that Wenserith made a statement of fact, rather than opinion. Third, we consider whether the statement is "susceptible of being objectively verified as true or false." *Id.* Although alcoholism may be a somewhat subjective disease to diagnose, we believe it is generally a statement that can be objectively verified as true or false. We cannot say that Newman can prove no set of facts in support

of her claim that Wenserith's defamatory statement was a fact, rather than opinion. We therefore deny defendants' motion to dismiss Newman's defamation claim.

### III. Conclusion

For the foregoing reasons, defendants' motion to dismiss Counts III and V is denied. Defendant's Motion to Dismiss Count IV is granted as to Hansen & Hempel and Paul Ghiotto, and denied as to Art Ghiotto.

It is so ordered.

MARVIN E. ASPEN
United States District Judge

Dated: 10/30/02